UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.14-23217-CIV-WILLIAMS/SIMONTON

EDGARDO G. BONET
    Plaintiff,

vs.

NOW COURIER INC
ALEXANDER MOLA,

    Defendants
_____/

## DEFENDANTS STATEMENT OF UNDISPUTED FACT

Comes now, the Defendant, by and through undersigned Counsel and pursuant to Local Rule 56.1, files this statement as to undisputed facts in this case and states the following;

1. Edgardo Bonet, Plaintiff, hereinafter "Bonet" began a business relationship in April 2012 when defendants Alex Mola and Now Courier, hereinafter "Defendants" placed an ad on a social media website, craigslist.com for an 'on demand and delivery driver with own cargo van, valid driver's license and insurance with a compensation based on 65-70 % of value of trips. See Ex. 1 attached to Motion to dismiss amended complaint (DE 25). Bonet was asked in deposition about how the relationship was formed.

    Q. Mr. Bonet, how did you first learn of Now Courier Inc.

    A. Craigslist.

    Q. What is craigslist and how did you learn on Craigslist about Now Courier Inc.

    A. Well I found out about Craigslist through a friend. I was out of work so he showed me the site so I went to the site, I saw the announcement and they were looking for a driver. "Bonet Depo. 6:17-25, October 4, 2015" (Attached Exhibit A)

    Plaintiff indicated after reviewing the announcement, he met with Alex Mola who told him he would be "doing delivery work for 70% of the travel plus extras.

"Bonet Depo. 8:6-25".  Plaintiff was asked whether he was required to have his own vehicle and whether he accepted the engagements based on these discussions and whether he accepted the engagement and he responded in the affirmative. "Bonet Depo. 8:20-24".  Bonet was asked;

Q. And, was it your understanding you would have to provide your own gas for your vehicle?

A. All expenses were on me.

Q. Okay.  And by all expenses you mean gas, insurance, maintenance?

A.  Maintenance, food, clothes, everything; phone.  "Bonet Depo. 9:1-6".

2. The parties, at the initiation of their relationship were fully aware and had a mutual understanding that this was an independent contractor relationship.  This is borne out by the fact that the Bonet signed an independent contractor and non-compete agreement (See Ex. 2 attached to Motion to dismiss amended complaint (DE 25). Asked "did you sign any agreement with Mr. Mola regarding this relationship that you were engaging in" Bonet responded, Yes Yes. "Bonet Depo. 9:7-10".  Bonet was asked if he recognized the document, which for deposition purposes was marked as defense 1, as one which he signed.  He responded that he recognized the document, "it is my signature, it is my handwriting…. "Bonet Depo. 9:11-17".

3. The Plaintiff is an experienced independent contractor courier and understood the nature of the independent contractor relationship.  Asked whether he had worked for a courier company in the past, Bonet responded "yes, since 2007/2008" Asked if in the past he has worked as an independent contractor based on his understanding of what that was and he responded "yes sir" "Bonet Depo. 10:15-24".  Bonet named LTL, Comet Delivery and Fort Lauderdale Express as companies he had worked for in the past as an independent contractor. "Bonet Depo. 16:2-7".  Bonet was asked;

Q. What is your understanding of being an independent contractor?

A. That is precisely what Alex Mola and I spoke.

Q. What I want to know is what your understanding is, in the past when you have worked as an independent contractor, what it is to be an independent contractor?

    A. To work with your own materials-your car that is- insurance, gas, and so forth.

    Q. And this is the same thing you and Alex Mola discussed; is that correct?

    A. Yes, sir.

    Q. When you walked away from that meeting that day did you leave with the understanding you would also be an independent contractor with Alex Mola and Now Courier?

       [Counsel for Plaintiff Steven Fraser, objects to form]

    A. Of Course. It was not the first time I was working under these conditions. "Bonet Depo. 9:25 and 10 -1-17".

4. Throughout the relationship the parties continued to operate in a manner consistent with the understanding of the independent contractor relationship. Bonet purchased his own gas, maintained his own vehicle, was never provided with an office to work and only checked in by phone with Alex Mola to find out about available jobs. "Bonet Depo. 12:15-25".

5. Bonet held himself out to be an independent contractor and Sole Proprietor in his Tax filings consistent with his work status. In the defense first request for production, Number 1, Plaintiff was asked for his Federal Tax returns filed on his behalf for the years 2011 through 2014. Subsequently, in response to this request, complete tax returns were provided for the years 2012 to 2014. In reviewing the tax returns for 2013 marked as Defense 3 for deposition purposes, defendant produced a form 1099 Misc. purported to show income received from Defendants showing income of $21,793.40 which formed the basis of his income tax filing. (See Defense 1). Bonet was questioned on this filing;

Q. I am showing you, sir, your tax return for 2013 that was again provided to us when we requested production of certain documents. Is that your social security number at the top right corner of that document, sir?

A. Yes, it's mine.

Q. And was that document prepared and filed on your behalf by Brito Tax Preparers?

A. I believe that that was already left clear, because you asked me this about the taxes for that other year, that yes, he is the one that prepares it. "Bonet Depo. 32:25, 33:1-10".

Q. We are going to focus on 2013, sir. We are looking at a document titled 2013 Form 1099 Miscellaneous, and it has your name in the middle of the document. Is that the document that you recognize?

A. This was handed to me by Alex Mola who gave this to me to do my complete taxes for 2013.

Q. This document in line number 7 indicates income of $21,793.40. Is that your recollection of the amount that you earned 2013 from Alex Mola?

A. Well, it could be. Possibly.

Examination of the Bonet's 2013 tax return shows that Bonet filed Schedule C, Profit and Loss from Business which reflected business income of $21, 793.40. Of this income Bonet claims $17,081 as Car and Truck Expenses, and Other expenses of $2357.00, showing an operating loss of ($305.00). On Form 1040, individual Tax return, Bonet shows Business Income/Loss of ($305.00), and individual deductions of $6,100.00. No other income is claimed. (See Defense 3, Exhibit to deposition, also "Bonet Depo. 34: 8-25, 35:1-20". 2012 and 2014 Tax returns were filed in similar fashion, claiming various expenses. In 2014 Bonet filed another Schedule C, profit and Loss from Business as a Sole Proprietor, he claims earning from Defendants of $19,557 in the period up to August 2014 when the relationship between the parties ended. For expenses he claims $16,555 as Car and Truck Expenses, $1992 for telephone, other Expenses of $120.00, Tolls of $566 and clothing of $180.00. "Bonet Depo. 36:9-, 37:1-24, 38:1-9, 42:1-16". ("Defense Exhibit to Depo. 4)

6. Bonet did have an opportunity to earn income from other sources and his bank account deposits indicate that Bonet did in fact earn additional income from other sources. Questioned as to whether during the two year period he earned additional income from other sources, including self-employment Bonet said "No No" Several further enquiries as to other sources of income met with a denial of any

additional sources of income. "Bonet Depo. 15:19-25, 16:1, 32: 14-20", 68:12-16.

An examination of the Bonet's Wells Fargo Checking Account ending in 0623 and Wells Fargo Savings Account ending in 1087 for the period January 2013 to December 2013, reflect that despite earning $19,557 from his engagement with Now Courier in the year 2013 and Bonet's declaring he had no other source of income, Bonet deposited a total of $46,188.73 to his accounts during that period. In the month of February 2013 Bonet made total deposits of $18,314.00, where he had been paid only $2340.00 by Now Courier, in the month of May 2013, Payment records from Now Courier show payments made to Bonet in the amount of $1025.50, Bonet made deposits totaling $3045.00, in the Month of October 2013 Bonet received payments of $2,116.50 from now Courier and deposited a total of $9158.15 to his accounts. (See Composite Exhibit 4-8, (DE25) and Attached Composite Exhibit B (Payment transaction Details and 1099s for Bonet) (Exhibit 8-19 attachments to Deposition containing bank statements.

Questioned about the source of these deposits was met with "I don't recall" as to each and every deposit. "Bonet Depo. 74:16-22, 75:3-6, 76:3-14, 79:8-14,". Bonet was specifically asked if he received a gift during that year, he replied "I don't Remember",  asked if he sold an asset, he replied "I don't remember", asked if he received an inheritance during the year he replied "no sir", asked if he found some money, he replied "no" "Bonet Depo. 89:5-21."

7. Now Courier did not earn over $500,000.00 in gross receipts in the year 2011 to 2014.  See tax returns (See Composite Exhibit 4-8, (DE25), (Attached Ex. C, *also* 2014 Tax Return, Exhibit D, Sworn affidavit of Defendant.)

8. Bonet did not engage in Interstate Commerce.  In response to defendant's first request for interrogatories, Bonet was asked, what Geographic area he made deliveries and answered Dade, Broward and Palm Beach Counties (Interrogatories No. 15., Bonet was questioned in Deposition regarding this issue.

Q. Now sir, with respect to your claims in your lawsuit that you handled goods that came through interstate commerce, could you tell us what kind of goods you handled that came through interstate commerce.

A. Interstate? I have not gone to any other State than Florida. "Bonet Depo. 107:5-10"

Q. Were you ever aware of the nature of the goods you were transporting?

A. Yes, almost always

Q. Can you give us an example of those goods you were transporting?

A. No, right now I don't remember.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing has been furnished by the Southern District of Florida's CM/ECF system to all counsels of record this 30th day of October 2015.

    Respectfully submitted,

    /s/Mark Douglas
    _____
    Mark Douglas, Esq.
    Attorney for Defendant
    Florida Bar No. 27701
    2331 North State Road 7, Suite 106
    Lauderdale Lakes, Florida 33313
    Telephone: (954) 730-8393
    Fax: (305) 356-7154
    E-Mail: mark@markdouglaslaw.com